All right, Counsel. Good morning, Your Honors, and may it please the Court. Rachel Wharton on behalf of Petitioner Bam Sidharv Vurimindi, I'd like to reserve three minutes for rebuttal. Three minutes it is. Go ahead, please. Thank you. The BIA erred in this case because the Pennsylvania Stalking Statute does not support removability. I'd first like to address the Court's recent letter to the parties. The first question that the Court presented was whether the BIA's August 2019 opinion is fairly read as opining on the merits of removability. Obviously, in our briefing, we fully briefed the preservation issue because the BIA's order is terse, making it challenging to determine whether it was reaffirming its waiver decision or addressing the merits. In our reply, though, on page 14, we pointed out that the reconsideration order had the force and effect of upholding the IJ's erroneous conclusion. So your position is we should take that as a merits determination by the BIA? Our position is that it's a close question, and if the Court applying cases like Jean-Louis view the order as addressing the merits, then we would agree with that. I think it's not squarely how we briefed in the opening brief, but because of the BIA's standard on reconsideration, it allows parties to present arguments that the BIA may have overlooked. And so we don't think that this issue is dispositive. I don't want to spend too much of your time on this, but the motion for reconsideration was the April 11th motion, which didn't argue removability. It only argued the prematurity issue. There was an August 2nd motion to reopen that did argue removability. Do you have a position as to whether the August 12th order of the BIA was also resolving that motion to reopen? Or was the motion to reopen just left unresolved by the BIA in view of the petition for review that was filed with our Court? Well, Mr. Berman, he filed two motions to reopen. So is Your Honor talking about the first motion to reopen? He filed what was essentially a motion to restart the case. And in that motion, he did absolutely present the arguments about the Pennsylvania Stalking Statute. The second one of August 2nd, 2019, do you have a position as to whether that was resolved by the August 12th order? My understanding is that it wasn't. And I believe that that is subject to a separate appeal in this court because it was ruled on later by the BIA. The reason why the issue is dispositive is, pardon me, far from dispositive, is because this court has authority to rule on pure legal issues, especially issues that are outside of the BIA's expertise. In Ventura, which the court cited in its letter, the case arose in very different factual circumstances where the BIA had refused to rule on changed country conditions. And the Ninth Circuit then made sweeping findings about country conditions. Here we have the cases cited on page three of our reply brief and the cases cited in the court's letter all show that the precedent aligns in the situation that's presented before the court where there's a pure legal issue that's not committed to the BIA's expertise. Further remand is inappropriate here because of the judicial efficiency concerns. Remanding to the BIA for something that is not within its expertise would merely cause a delay and this court would not defer to its conclusions if the case were appealed again. In short, the BIA cannot insulate itself from appellate review by refusing to rule on legal issues. The government agrees with us on the threshold issue of exhaustion, so I'll move on to the merits unless the panel has any questions on that. Okay, thank you. Under the INA, stalking is not a removable crime when it is committed with intent to cause emotional distress. In Sanchez-Lopez 1 and 2, the BIA held that the generic federal crime of stalking requires the intent to cause fear of bodily injury or death. The BIA looked to the definition of stalking as it existed in 1996 and as it prevailed among the states. Under the categorical approach, a statute that criminalizes lesser mental states, such as Pennsylvania statute, which criminalizes acting with intent to cause emotional distress, are overbroad and do not support removability. Counsel, we start with the text, so help us with the text here. We have this grammatically very strange presentation, but it is disjunctive. It does have an either, an or, and your position seems to be that, as a grammatical matter, that the either should have been after intent, not before. But the legislature placed it before. Doesn't that indicate that, although the word may be missing after or, it really was setting up either an intent as to bodily harm or an intent with emotional harm? No, Your Honor. The first two Mathis factors address the statutory text. As to your specific question, here the Pennsylvania legislature, when it amended the statute, lumps together two subsections. And so this court should not read into whether there's a missing word in the statute, because the legislature was acting with what appears to be the intent to give the prosecution more latitude and leeway in terms of how it proves this. Let me just ask you a question about certain things just feel more disjunctive than others, right? And so certain mental states can be truly like, you know, you might say is recklessness, you know, disjunctive from knowledge, right? And so those might be more just naturally disjunctive. And this is kind of an ancient common law, maybe not super useful these days, way of thinking about mental states. But there is this notion of certain crimes being specific intent crimes, where there has to be not just a culpable mental state, but a mental state that also has its specific intention to the harm done. And so this statute suggests that there's two separate specific intent crimes. It's not just a general intention crime. The intention looks at the outcome of the action. And so when there's two separate specific intent crimes, doesn't that sound like two distinct mental states that from the text of the statute is most naturally read in the disjunctive? It's not knowing for all these other things. It's one specific intent. The intent is to cause some degree of bodily harm. The other is to cause serious emotional distress. But they both look at the outcome. And so it's not a general intent crime. So why isn't the fact that the legislature seems to be using specific intent crimes evidence that they want each one of those intents to be disjunctive, not just separate means? Your Honor, this court need only look to the federal stalking statute, which criminalizes a host of different intents, including to kill or to distress the victim. And that is an indivisible statute. So even if there are different specific intents, that doesn't necessarily mean that they are elements. And that would be contrary to what this court has held in Gonzalez and other cases where it discusses specifically the Mathis factors, which are, first, whether the statute identifies what must be charged. That did not happen here. Whether there are separate penalties within the statute, that also does not exist here. So let me just – I'm familiar with the Mathis factors. Let me just ask you one hypo based on my question. Instead of – if the statute were to read – demonstrate either an intent to place such other person in reasonable fear of bodily injury or knowledge that action would cause substantial emotional distress, would that kind of variation between mental state, one saying intent, the other one saying knowledge, you would think that that would evidence a divisible statute as opposed to one where these were just separate means of proving the same thing, right? We would disagree with that under Mathis and Shepard. If the statute is – if there are not any other indicia of elements, then that would not be sufficient. So can – so under your reading, can mental state, can alternative expressions joined with a disjunctive in a statute ever be divisible? We have not – the government has not cited a case where that is present. And so can you think of – so I mean my concern is the position that you're advocating seems to be every single time there's a disjunctive with respect to mental state, it's indivisible. And what would – then what is the instance in which there could be a statute with disjunctive mental states that would be divisible? For example, if there are separate penalties that are attributed to separately enumerated mental states, that – for example, in Peppers, this court has held that that statute, which was also in a disjunctive, was divisible. But absent separate penalties, two separate mental states to you would always be indivisible? I cannot think of a situation where it would be – Counsel, didn't we look at this as to simple assault for the Pennsylvania and New Jersey statutes and determined given the text and structure of those statutes as well as penalties that the mental states there were divisible? How – since we've already held that as to certain statutes, how would you distinguish text and structure here? Because of the lack of any indication in the text, including the legislature failing to include different penalties, failing to say that one or both may be charged, the model jury instructions in addition point to there being two elements for the statute. And so there just isn't indicia that meets the government's heavy burden here. I see that my time is up. Yeah, that's fine, except we have more questions. Okay. So let me ask you this question. When we look – obviously we've been talking about A1. Let's talk about A2 for a second. As you look at A1 and A2, what can we infer or intuit from just the language that the legislature used in each case with regard to the question of indivisibility versus divisibility? I'm not sure that there is much to be gleaned from that. A1 and A2 are separate crimes. One is actions and one is communications. But there are not separate indicia, again, of charging A2 separately. And so I think that they are quite similar. And here, under the fourth Mathis factor, if the court were to peek at the information, the court sees that Mr. Vermondi's convictions were under A1. And so that's the focus here of the court's determination. Do we have to go there? You spent some time in your brief talking about the superior court cases, which reference, albeit in passing, a singular intent. Do any of them actually address a question of divisibility, per se? In Mathis, the Supreme Court said that if a state court appellate decision clearly addresses it, then that solves the issue. These are unpublished cases, and we do not think that they clearly address the issue. The Russian case, for example, refers to intent as an element singular. And the Royster case, which is cited in our brief, talks about how a defendant could have acted with either or both intent to sustain a conviction. But we do not think that that's clear under Mathis. So where are we left if we have a statute which, by its text, points in different directions? These unpublished cases that may talk generally about singular but aren't dispositive, and jury instructions to which you've pointed us, where does that leave us if we can't be certain about what the intent was in the statute? Well, then the court treats the statute as indivisible under the categorical approach and compares it to the federal generic definition. You had mentioned earlier the change from the original version of the statute to the one that is before us now. Is it your position that by taking what had been two separate sections and writing them into this paragraph of A1, that that changed it from a divisible statute to an indivisible one? No, Your Honor. We haven't taken that position in the briefing. We merely distinguished some of the government's cases because they were citing two much older cases that talked about how there were separate subsections. We have not looked back that far to determine whether there's Pennsylvania case law on point. What about the model of jury instructions? I mean, don't those somewhat suggest at least that judges should instruct on one mental state or the other? Under the secondary sources that we say in our applied brief, judges are always permitted to instruct based on the evidence that's adduced at trial, and they always have discretion. In the Citron case, which is out of the 11th Circuit, the court goes into detail about how definitions and subsections are far from dispositive in this situation. Yeah, I mean, they tend to be, but then the Mathis tools, we don't always get hits on every single Mathis tool. And so maybe the closest hit that we're getting on any of the Mathis tools is the model jury instructions, which says instruct separately on mental state. And if that's the hit that we get under a Mathis tool and that's the only one we get, why shouldn't we run with it? Well, because under the criminal law, as the court knows, that would open up for criminal defendants the ability to argue in many cases that the jury didn't unanimously find their mental state. And so the Pennsylvania courts have not appreciated or accepted that argument in Rushing and Royston, because defendants in Pennsylvania can be convicted if they use both or either mental state. What authority do the jury instructions carry in Pennsylvania? I do not know the answer to that question, Your Honor. I'm wondering if that's something that is from the Pennsylvania Supreme Court or also has the imprimatur of the legislature, because one of the one of the things that I think you noted in your brief is that it talks about the third element. And the subcommittee's decision not to incorporate the effect on the victim, which suggests that they were viewing the first and second, the second being intent, as the only two elements of the offense. Yes, Your Honor, we think that the committee notes fully support our position here. And that the government's only argument about the model jury instructions is the A and B subsections. But you don't know if that's something that gives us any insight into the legislature's intention versus simply the court's interpretation? No, Your Honor, I don't know who appointed the subcommittee. One moment. On the question that Judge Krause just put to you, why don't you have a response in writing to us? Yes, Your Honor. In what's a reasonable time for a very, very busy, you're not a partner yet, are you? No. Associate. Would seven days be acceptable to the court? Seven days would be fabulous. Thank you. All right, thank you. And now the red light does call. Okay, I will see you on rebuttal. May it please the court, Victoria Braga, appearing on behalf of the Attorney General. I'd like to start by addressing the issue that the court raised in its recent letter to the parties. The court asked whether the board had addressed removability in its most recent decision of August 12, 2019. To answer this question, it's necessary to look back at the other decisions of the board in this case, starting with the board's initial decision, which was issued on July 7, 2017. In that decision, the board stated, On appeal, respondent argues his conviction is not final for immigration purposes. It then included a footnote stating, Although the respondent challenges the finality of his conviction, he does not contest his removability. We consider the respondent's removability settled and do not revisit that finding here. When the board reinstated this decision on April 9, 2019, it stated, In the motion to reopen and terminate, the respondent argues that his offense was not a crime of stalking, and he is not removable as charged. Thus, his removal proceedings should be terminated. As noted in the board's July 7, 2017 decision, in parentheses, at page 2, footnote 4, the respondent did not contest his removability on appeal, although he challenged the finality of his conviction. Therefore, the issue is raised, and we did not and do not revisit the matter. Following this, the respondent filed a motion to reconsider, and the board issued a decision stating, among other things, that it had not overlooked any argument raised by the respondent. As we've argued in our brief, the board, under this court's exhaustion law, was incorrect to find, in its July 7, 2017 decision, that a respondent had not raised the issue of removability. As we've also noted in our brief, and in relation to the court's other question, the court is permitted to remand this issue to the Board of Immigration Appeals so that they may address respondent's removability in the first instance. However, this is a legal issue that the court reviews de novo, and as explained in the cases cited in the court's recent letter, the court can therefore not remand the case to the board and address the issue in the first instance. Is it your position that Jean-Louis already controls that issue, or are we taking it a step further to adopt the positions of the 9th and 11th Circuit, that even where an issue wasn't addressed at all by the BIA, that when it's dealing with a question of the categorical approach or interpretation of state law, where the Ventura factors aren't met except for the first in time of the BIA's review, that we need not remand under Ventura? I believe the court's case law is in line with the 9th and 11th Circuit's cases that are cited. In Jean-Louis, the issue is whether the petitioner had committed a CIMT, a crime involving moral turpitude, and the court said that it gave no deference to the agencies constructed of a criminal statute. The court also has a more recent decision, Wang v. Attorney General, where the court said similarly that a purely legal question was reviewed de novo. In that case, the petitioner had been convicted of a financial crime, a violation of the Commodity Exchange Act, and the government had charged him as removable for the commission of an aggravated felony, specifically a fraud offense. The court said that it could review whether petitioner's crime qualified as an aggravated felony de novo without remanding to the board. It also did not apply a review bar on reviewing removal orders against individuals convicted of aggravated felonies because the issue was purely legal and one that the court could address in the first instance. Should the court choose not to remand the issue and address in the first instance the issue of removability? The government has consistently argued that Mr. Viramundi's statute of conviction is divisible with regard to mens rea. The government has relied... Let me ask you this question since you've now boldly stated your position. Let's assume just for a moment, from your standpoint, that the statute is indivisible, right? Would you concede that the Pennsylvania Stalking Statute is broader than the crime of stalking under the INA based on the inclusion of the phraseology intent to cause substantial emotional distress to such other person? Yes, based on the board's matter of Sanchez-Lopez decision issued in 2018, yes, we would agree that the statute is broader than a stalking statute which would have removability consequences. Is it also the government's position that the text is ambiguous? I note in your brief you jump over any discussion of the text demonstrating that it's divisible and go to talking about AVER and other evidence. Well, beginning with the text, as the court has noted, the text is disjunctive so that is an indication that the statute may be divisible. There is a body of case law indicating that often the use of the word or is not enough to establish that a statute is divisible and for that reason, in those situations, the court considers the math as factors which involves looking at how Pennsylvania courts have applied and discussed the statute as well as the model jury instructions as well as in some instances documents in petitioner's own case. What weight should we give our statement in Gonzalez that mental states are typically indivisible? I don't know the specific crime that was at issue in Gonzalez but this is a question that is best answered, I think, by looking at Pennsylvania case law which is interpreting the statute and Pennsylvania case law, again, as opposing counsel noted although some of the cases are unpublished, do provide indications that the mens rea prong of the statute provides for two separate elements. I think the best support for that argument is the Heflin case which is an unpublished 2014 case. There, the Pennsylvania Superior Court was considering an appeal of judgment of sentence. The court noted that in considering the defendant's arguments that his actions did not suggest an intent to cause emotional distress. The court focuses solely on the emotional distress element of the statute never once mentioning that stalking can be or in this case was maintained or was established by causing fear of bodily injury. The court notes that in considering appeals like the one it was considering in Heflin the appeals court considers whether the prior fact could have found every element established beyond a reasonable doubt. Let me just pick up on that. I mean, one of the really interesting things, at least in big picture, when I think of Mathis, I think of the phrase, we're trying to distinguish between elements and means, right? And so we've got these tools, we've got all this other stuff, but at the end of the day we're trying to put disjunctive statutes into, is it disjunctive as far as the elements go or is it disjunctive as far as means of proof go? And so it seems that our first pass should be at the statutory text. And Judge Krauss pointed out when your friend was advocating that this might not be the model of grammatical clarity. But I'm going to pick up with just midway through where it says under certain, so I'll just read A1. You okay if I read A1? It basically says a person commits the crime of stalking when the person either engages in the course of conduct or repeatedly commits acts towards another person, including following the person without proper authority. And this is the part I care about. Under circumstances which demonstrate either an intent to place the other person in a reasonable fear of bodily injury or to cause substantial emotional distress to such other person. But it seems that the way this is structured says, hey, when we think of the mental state, we're going to look at the circumstances and then we want to see that the circumstances demonstrate these things. And so that seems to be by focusing on what circumstances demonstrate these mental states, it seems that that's much more in terms of means. These are alternative means of demonstrating culpable circumstances. When they say demonstrate, that feels a lot more like a means of proving something than it does an independent separate element. What do you say to that? If they want to make these independent elements, they want to say, hey, you can prove it this way by demonstrating this or you can prove it this way by demonstrating that. I mean, the word demonstrate coupled with under circumstances seems to really suggest that maybe Pennsylvania views these as alternative means. The indication in the case law that these are elements and not means are indications such as the one in Heflin where the court only discusses one mental state in the statute, the mental state of causing emotional distress, as opposed to analyzing, when it's analyzing whether the elements of the statute were proven beyond a reasonable doubt, the two mental states together as one element. You can also look back at a former version of the Pennsylvania statute, the version that was in effect, I think, prior to 2003. At that point, the statute actually numbered the two different mental states, I think proving more so that these are intended to be proven beyond a reasonable doubt. Well, let me ask this. Do you know of any cases where the statute has said you have to demonstrate this, where demonstration is followed, it precedes a disjunctive expression, and a court has found it to be divisible as opposed to those being alternative means? I'm sorry, Your Honor. I don't know of a specific case. But again, looking to the Pennsylvania case law and the former version of the statute, which lists the two intent elements as one and two, and then looking at that in conjunction with the Royster case, a 2014 unpublished case, which said that the amendment to the statute as it appears here did not intend to cause any substantive change to the statute. It was simply the Royster case refers to it as a renumbering. So I think looking at the statute, the disjunctive statute as it's written, the Pennsylvania case law interpreting the statute, and the former version of the statute, which is, as Pennsylvania courts have determined. But just, I'm sorry to interrupt, but just look, disjunctive is powerful evidence of divisibility unless it's disjunctive in the context of expressing alternative means. Then it's not really evidence at all of divisibility. It's actually evidence of indivisibility. And I guess what I'm asking is, we have a disjunctive that follows how an element can be demonstrated. And so that's weird to me to say, no, no, no, those are separate elements, and this isn't describing modes of proof. This is actually describing separate elements. They wouldn't have said demonstrate if they wanted to make these entirely separate elements, would they? Well, I don't know how much we can read into the use of the word demonstrate. I think, importantly, following that, it's either an intent to place such person in reasonable fear of bodily injury or to cause substantial emotional distress. So what the statute is talking about here is the intent prong, the mens rea of the statute. And when we're looking at the mens rea of the statute, which is something that has to be proven always for a criminal conviction, here the statute is providing two options. And as we've argued- Does that speak to indivisibility? Because I think in order to answer Judge Fuchs's question, you have to tell us what the two crimes are that you're going to prove beyond a reasonable doubt. So the first crime, as indicated in Mr. Veramangi's own documents, would be stalking- No, I'm so sorry. I'm going to interrupt you, and I beg your pardon. Tell me, based on the statutory language, right, looking at A1, what are the two crimes? So the first crime would be engaging in a course of conduct or repeatedly committing acts, which demonstrate an intent to place such other person in a reasonable fear of bodily injury. And the second crime would be engaging in a course of conduct or repeatedly committing acts, which demonstrate the intent to cause substantial emotional distress to such other person. And when we look at Pennsylvania case law- Those are your two elements based on your analysis, not two means. Those are two elements. Those are two separate crimes. And when we look at Pennsylvania case law, such as the Heflin case, we see that the court is referring to the crime exactly in that way. When it's referring to the crime in the particular case that it's discussing, it's not using the fear of bodily injury language. It's only using the substantial emotional distress language. And when we look at Mr. Viramindi's criminal documents, we see that the language used in his criminal documents indicates that his conviction involved an intent to place another person in reasonable fear of bodily injury. Before we get to Shepard documents, as your colleague pointed out, a court can tailor its description in an opinion or even in jury instructions to the facts of a given case. But here we have jury instructions that, in a minimum, appear from the manner of citation to be promulgated or proved by the Pennsylvania Supreme Court. And it indicates on its face that there are two elements with commentary reflecting that they rejected the addition of a third element. How do you square your interpretation of the statute with the actual instructions that are being given to Pennsylvania juries? Thank you, Your Honor. I do want to note that my time has expired. May I briefly answer the question? You don't need to be brief. Thank you. So I am seeing on the jury instructions that there is a first element and a second element. The second element is the mens rea element. However, the jury instructions indicate that a choice needs to be made by an instructing judge as to which mens rea the jury should be instructed upon. Therefore, a conviction would have jury unanimity as to whether a defendant had an intent to put the name of his victim in reasonable fear of bodily injury on one hand or whether the defendant intended to cause his victim substantial emotional distress. The conviction, the jury would be instructed, in our reading of the jury instructions, the jury would be instructed only on one of those choices and therefore their verdict would be unanimous with regard to one mens rea or the other. It would not encompass both mens rea elements, which would more so indicate that these were means not elements. The fact that a conviction would indicate only one mens rea indicates that the statute is divisible. How could the jury instructions be different if this were simply two alternative means of establishing the mens rea? So the jury instructions could be not broken out into A and B. They could just say as one continuous sentence, second that the defendant did so under circumstance that demonstrate that he intended to put his victim in reasonable fear of bodily injury or intended to cause his victim substantial emotional distress. The fact that the jury instructions are broken out for this prong of the statute, the mens rea prong, into A and B indicate that there's a choice here made and there's only one mens rea that a jury will be instructed upon. So if the appearance of both of those within the single paragraph or single sentence is sufficient, why do we need to even get past the text? Because generally the use of the disjunctive indicates divisibility, although not always. So the use of the disjunctive here indicates divisibility. Mr. Veramundi is arguing that's not enough. We need to look further and we need to look at case law and we need to look at jury instructions and we need to further analyze under math as whether the disjunctive here means divisibility or indivisibility. And then when we look at the case law and we look at the jury instructions, the way that the jury instructions are further broken down indicates that this statute, by its use of the disjunctive, does in fact, like other statutes using disjunctives, intend to create two separate mens rea elements. You pointed us to Heflin and certain Superior Court cases that you argue support it being divisible. Do you agree, as your colleague has pointed out, that there are also Superior Court cases talking about it in the singular that might suggest it's a single element? I do note that there are cases that counsel has cited that refer to the mens rea element of the statute. I think those cases are not directly on point. I know that counsel mentioned the Rushing case, which referred to the two mens rea together as an element. There, in Rushing, the court was comparing the elements of stalking with the elements of indirect criminal contempt. And in making that comparison, the court said that the mens rea element of stalking is not an element that appears in indirect criminal contempt. I don't think that that rules out the possibility that these two mens rea are separate elements. I think the court was simply indicating that neither an intent to place someone in fear of bodily injury or an intent to cause substantial emotional distress is an element of indirect criminal contempt. It's a phrase that's used in the court's decision that I don't think has the force of establishing that the mens rea here is a singular element as opposed to two separate elements. If we have a statutory text that has different indications in it and we have to go past that to look at the case law, we have the case law that, as you seem to acknowledge, doesn't rule out your adversary's interpretation and perhaps also doesn't rule out your interpretation, and different arguments that could be made about the jury instructions, where does that leave us as a court? Do you agree that if we're in equipoise that we then need to, under our case law, conclude that it's indivisible? As counsel points out, under Mathis, when there is confusion looking to the Mathis sources over whether the statute is divisible or indivisible, the question should be resolved in favor of indivisibility. However, we submit here that the evidence that we have pointed to, case law, which is more on point, the actual disjunctive nature of the statute itself and the use in the jury instructions of separate numbering to indicate the two elements is sufficient to prove that this is a divisible statute. But all the case law that you point to is non-precedential. So I presume that that at best would mean that we just set it all aside. So that leaves us with the quandary then. There are published cases that we've cited in our brief. I think Heflin is the most on point, which is an unpublished case. However, Heflin does cite Miller, which is a 1997 published case. And Abbott is also a 2010 published case, which we have cited in our brief as indicating that these are two separate elements. The mens rea of stalking are two separate elements. What about the fact that the penalties that would arise from A1 are the same? What role does that play in our analysis? I don't think it plays a major role. There being different penalties ascribed to different offenses is often or sometimes an indication of divisibility. However, there are divisible statutes that carry the same penalty regardless of what separate crime is convicted under the statute. That is just one signal that courts can look to. But the absence of different penalties certainly does not indicate indivisibility in all instances. I think what you're saying is that if there are different penalties, that's strong, strong, strong evidence of divisibility. If there's not, well, legislator can penalize two different crimes the same way. So it might not be strong evidence one way or the other. But you keep going back to disjunctive. This is a hard case unless we read the statute as just being disjunctive as to means. If we read the statute as just disjunctive as to how something is demonstrated, then that's kind of the end of the story, right? It's disjunctive as to means, not elements, and therefore it's indivisible. If we read it that way, it's not hard anymore. If we don't read it that way, if we read it as potentially disjunctive as to elements, then it's quite an undertaking. That is, and again, we are engaging in this analysis because of the argument that Mr. Veeramundi raised to the board, which again was not addressed by the board, and then to this court, that the use of the disjunctive here, which is typically an indication of divisibility, is not enough. We need to look further at the math as signals. Yeah, but if we view the disjunctive as just disjunctive means, then we're done. Yes, if the court reads the statute to enumerate separate means of committing one crime, then it is an indivisible statute and it could not sustain the removability charge here. All right, thank you so much. Yeah, thank you so much. Thank you. I only have a few points for rebuttal. The first is I'd like to address the Pennsylvania case law very briefly. Miller does not support the government's position here, and even if it did, it is a pre-amendment case. Abed is non-presidential. It's a table case, so even though it has a case reporter, it's not presidential. And Heflin was addressing the difference between the harassment and stalking statute, so it also does not support the position that the government took in its brief. As the government agreed, the Pennsylvania stalking statute is overbroad if the court determines that it's indivisible. And even if the court were to determine that it's divisible, the record evidence here is inconclusive about the intent with which Mr. Bermondi acted. But that's a remand issue, right? If we find it's divisible, then it's a remand to look at which one of the prongs of the divisible statute applied. Thank you for asking that, Your Honor. Under Doe, this court should not give the government another bite of the apple. The government had every opportunity to admit record evidence, and it has failed to do so. And so we believe that this court should not remand. But, I mean, all of the reasons that the court might take the divisibility, indivisibility issue on its own aren't present, at least as I see, for us then making that determination and then doing the rest of the analysis. That seems like it's something that is really for the BIA to do first, not us, right? Well, this court is able to look at the Shepard documents. So it's within the court's discretion whether to remand. All right. Thank you so much. Thank you. I would be remiss if I did not say a big thank you to pro bono counsel. I presume, Ms. Zaleski? Yes, Your Honor. Yes, thank you so much for your participation. Of course, Ms. Horton, we thank you. And obviously, wonderful job. We appreciate it. Thank you. And counsel for the government, I think I did not mention that since Ms. Horton has the opportunity to respond to Judge Krause's question within seven days, you'll have seven days, within seven days after that, if there's any response to that. If not, please just write a letter in letting us know that there's nothing you'd like to add. Thank you, Your Honor. Okay, very well. Thank you both. We'll take the matter under advisement.